IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EARL DAVID WORDEN,<br>*Plaintiff*<br><br>-vs-<br><br>JOSEPH SALVAGGIO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; JOHN VASQUEZ, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; E. RIVERA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;  CITY OF LEON VALLEY, TEXAS, ROBERT SAUCEDO, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES;<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-22-CV-00286-XR |

## ORDER GRANTING MOTION TO DISMISS

On this date, the Court considered Defendant's motion to dismiss Plaintiff's claims arising under 42 U.S.C. § 1983 (ECF No. 4). No response has been filed, and the time in which to do so has expired. After careful consideration, the Court **GRANTS** the motion.

## BACKGROUND

This action arises out of Plaintiff Earl David Warren's detention during a demonstration outside of the Leon Valley City Hall on June 23, 2018, and the subsequent seizure of his video camera. Plaintiff is a videographer, vlogger, and civil rights activist who has been publishing his recordings on YouTube, Facebook, Instagram, and other social media forums since approximately 2014. ECF No. 1 ¶ 13. Plaintiff traveled to Leon Valley on June 23, 2018, to record encounters between a "community of videographers who were pro First Amendment," known as "First Amendment Auditors," and Leon Valley employees, including the Chief of Police, Defendant Joseph Salvaggio, who was expected to hold a press conference that day. *Id.* ¶¶ 14–15.

After waiting for approximately three hours, Plaintiff suspected that the press conference was unlikely to occur and decided to depart. As Plaintiff was packing up his gear, a man ran toward him and stated that police officers had emerged from the police station and were "attacking and arresting everybody and taking the phones and cameras." *Id.* ¶ 17. Plaintiff grabbed his video camera, began recording, and proceeded cautiously toward the intersection of El Verde Road and Bandera Road. *Id.*

Plaintiff was met by Defendant John Vasquez, a sworn peace officer employed by the City of Leon Valley, who seized his camera and detained Plaintiff using handcuffs "for having evidence or being a witness to a crime." *Id.* ¶¶ 18–19. Vasquez escorted Plaintiff to Leon Valley City Hall, where, despite Plaintiff's protests, Defendant Robert Saucedo, another Leon Valley police officer, forced Plaintiff to sit down and refused to help him in any way. *Id.* ¶¶ 20–21. Plaintiff continued to raise objections, stating that his actions were constitutionally protected, and offered to provide copies of the footage. *Id.* ¶¶ 22–23. Plaintiff was then taken into the police station, where Defendant E. Rivera (together with Defendants Vasquez, Saucedo, and Salvaggio, the "Individual Officers") placed Plaintiff's camera in an evidence bag and told him she was seizing it. *Id.* ¶¶ 23–24.

Plaintiff was held in the booking area in handcuffs and under guard for approximately forty minutes. Defendant Salvaggio offered to immediately release Plaintiff and return his camera if he would sign a release permitting the Leon Valley Police to remove the media card from his camera, examine it, and make copies of the footage. *Id.* ¶ 25. Plaintiff refused, stating that the camera and footage were personal property and that the officers did not have warrants to seize his camera or search his footage. *Id.* ¶ 26. After Plaintiff pointed out that his media credentials were on display on a name tag on his shirt, Salvaggio left the booking area with

Plaintiff's tag and returned approximately twenty minutes later, stating that Plaintiff's organization was an "anti-police group and not valid press." *Id.* ¶¶ 27–28.

After being detained for approximately two hours in total, Plaintiff was taken out of the police station and handed a criminal trespass warning. *Id.* ¶ 29. Plaintiff was told that his camera and media card were being held as evidence. *Id.* Leon Valley did not release the camera and media card to Plaintiff until May 4, 2020, precluding Plaintiff from accessing or publishing his video of the events of June 23, 2018, in a timely manner. *Id.* ¶¶ 29–30. Plaintiff has not returned to Leon Valley for fear that he would be targeted for harassment, arrest, or other retaliation. *Id.* ¶ 32.

Nearly four years after his detention and the seizure of his camera, Plaintiff filed his original complaint on March 24, 2022, asserting claims under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights. Specifically, Plaintiff claims that Defendants interfered with his First Amendment right to record the police in the performance of their duties, and that his First Amendment rights have been chilled by Defendants' pattern of targeting and retaliating against independent journalists and civil rights activists. *Id.* ¶¶ 45–48, 53–56. He further alleges that Defendants violated his right to be free from unreasonable searches and seizures under the Fourth Amendment, and that his camera and media card were withheld from him for approximately two years without due process of law, in violation of the Fourteenth Amendment. *Id.* ¶¶ 33–44, 49–52. Finally, Plaintiff asserts a *Monell* claim, alleging that the City of Leon Valley failed to properly train and supervise their employees, promulgating unconstitutional behavior. *Id.* ¶¶ 57–60.

Defendants now move to dismiss Plaintiff's complaint, arguing that his § 1983 claims are barred by the statute of limitations. ECF No. 4 at 4–8. In the alternative, Defendants contend that

the Officers are entitled to qualified immunity and that the factual allegations in the complaint are insufficient to establish a *Monell* claim for municipal liability against the City or any violations of his constitutional rights by the Individual Officers. *Id.* at 8–14. No response has been filed, and the time in which to do so has expired.

## DISCUSSION

### I.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II.     Analysis

A claim is time-barred and subject to dismissal under Rule 12(b)(6) where the claim was clearly filed after the applicable statute of limitations had run and it was evident from the pleadings that the plaintiff was not entitled to the benefit of the discovery rule. *Kansa Reinsurance Co. v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366–70 (5th Cir. 1994). The statute of limitations for claims brought under Section 1983 is determined by looking to the forum state's limitations period for personal-injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Texas, the statute of limitations for a Section 1983 claim is two years. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001).

The statute of limitations begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know of the injury. *Matter of Hoffman*, 955 F.3d 440, 444 (5th Cir. 2020). In this case, the statute of limitations began to run on June 23,

2018—the day Plaintiff was detained and saw his camera and media card being seized by Leon Valley police officers. Plaintiff filed his original complaint on March 24, 2022, nearly two years after the statute of limitations had expired.

Although he acknowledges the two-year limitations period in Texas, Plaintiff insists that the continuing tort doctrine applies here to toll the statute of limitations because his property was held by the City of Leon Valley until May 4, 2020. ECF No. 1 at 10; *id.* at 10 n.1 (citing *Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W. 3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied)). "In a continuing-tort case, the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops." *Gen. Universal Sys., Inc., v. HAL, Inc.*, 500 F. 3d 444, 451, 452 (5th Cir. 2007) (citing *Upjohn Co. v. Freeman,* 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied)); *see also Rogers*, 162 S.W. 3d at 290 ("[E]ach act creates a separate cause of action, and the cause does not accrue, for purposes of limitations, until the misconduct ends."). Here, Plaintiff seeks to characterize Defendants' "misconduct" as continuing to deprive him of his camera and media card for nearly two years.

The Fifth Circuit has explicitly rejected Plaintiff's expansive interpretation of the continuing tort doctrine, however, concluding that the doctrine does not apply to a one-time seizure:

> Huerta argues that the seizure of his funds constituted a "continuing tort" that tolled the limitations period because he was deprived of his money every day that it was not in his possession. The argument has no merit . . . . **The government seized his money once. Though Huerta experienced the consequences of that injury afterwards, the continued poverty he alleges does not convert the one-time seizure into an ongoing tort.**

*Huerta v. United States*, 384 F. App'x 326, 328 (5th Cir. 2010) (emphasis added); *see also Matter of Hoffman*, 955 F. 3d 440, 444 n.3 (5th Cir. 2020) ("In any event, the search and seizure here—a single incident—does not amount to a continuing tort, one which would forever suspend

6

the statute of limitations absent the horses' return.") (citing *Bloom v. Alvereze*, 498 F. App'x 867, 874 (11th Cir. 2012) (holding the refusal to return seized animals was not a continuous tort)). Indeed, the very case Plaintiff cites in support of his continuing-tort argument, *Rogers*, confirms that a continuing tort arises only when the wrongful conduct is repeated over a period of time. 62 S.W.3d at 290. ("[C]are must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortuous acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not.").

Thus, the continuing tort doctrine does not apply here—Plaintiff's camera and media card were seized only once. Though Plaintiff experienced the consequences of the seizure afterwards by being unable to post time-sensitive footage, this inability did not convert the one-time seizure into an ongoing tort. *See Huerta*, 384 F. App'x at 328; *Matter of Hoffman*, 955 F. 3d at 444 n.3. Because the Court concludes that Plaintiffs' Section 1983 claims are barred by the statute of limitations, it does not reach the alternative bases for dismissal addressed in Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Petition (ECF No. 4) is **GRANTED** and Plaintiff's claims are **DISMISSED** as time barred. A final judgment pursuant to Rule 58 will follow.

The Clerk is **DIRECTED** to mail a copy of this Order to Earl David Warren at 401 6th Street, San Leon, TX 77539 and to provide a copy by email to newsnowhouston@gmail.com.

It is so **ORDERED**.

SIGNED this 3rd day of June, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE